Good morning, may it please the Court. It is undisputed that Intel failed to have a neurologist, any neurologist, review the totality of the disability evidence supporting Ms. Hamma's claim. After Dr. Dozer, Hamma's long-time treating physician, referred her to numerous other physicians for evaluation and diagnostic testing with varying results from 1999 to 2002, Hamma traveled across the country to the renowned Chiari Institute to have her chronic, deteriorating condition evaluated by the top doctors. On May 9, 2003, neurologist Dr. Paul Bolognese, working in conjunction with Drs. Weingarten, who is a neuroradiologist, and Millhort, reviewed the May 8, 2003, neuroradiological documentation and noted significant positive findings concluding Ms. Hamma was affected by a variant of Chiari malformation. Did you make the statement that no neurologist ever reviewed her claim? No neurologist ever reviewed the medical records after she was diagnosed properly. Was Dr. Sands a neurologist? Dr. Sands and Dr. Burrs were both neurologists, but they reviewed the claim after the claim had been filed for disability, which was March 12, 2004, and they only reviewed the evidence that existed in the file at that time. With our appeal, if you look at ER 1218, Hamma submitted significant additional medical evidence in support of her claim. If you compare that to what was actually looked up by the committee, ER 1202, the denial letter of the appeals committee, fails to discuss, distinguish, or discount critical disability evidence. That critical disability evidence was never reviewed by Dr. Sands, who is a neurologist, or Dr. Burrs, the two consulting neurologists hired by the committee. That new evidence, all the disability evidence we submitted that we enumerate in our introduction and the reply, at ER 923 to 928, at ER 1237 to 1241, at ER 416 to 21, and at ER 318 to 60, that evidence was never reviewed by any neurologist. Intel tries to come up with a Hail Mary pass at the 11th hour submitting a 2009 declaration attached to its reply brief on summary judgment. I'm trying to understand your argument, but the evidence that was submitted, all the evidence that was submitted at the time of the initial denial was reviewed. So this is evidence that was submitted after the initial denial, is that correct? Yes, it was evidence that we submitted to the committee, the appeal review committee. There was one doctor that reviewed the claim initially, and then Dr. Sands was the neurologist to review the claim on appeal. But he reviewed it early in the appeals process, before the time came that Ms. Hama had to file her additional evidence. Ms. Hama filed her appeal, requested an extension of time properly under ERISA. An defendant tries to make much of the time when Hama actually submitted her evidence, but everything was timely and done appropriately within the regulations. When she submitted voluminous information, including functional evidence supporting her restrictions and limitations, by not only her longtime treating physician, Dr. Dozer, who was in the best position to know her, but also the world's experts from the Chiari Institute. One, the quality, and then the person that was in the best position to know her. That evidence, including other things like the Social Security decision of disability, the vocational evaluation by Doug Brooks, those pieces of evidence were never reviewed properly by the committee. They're not listed or discussed in the denial. And under recent case law, including Montour by this court, and Saffron, and even an unpublished decision earlier this year, Stereo, is persuasive, that there's no other alternative but to reverse this case. There's absolutely no question, for instance, that the committee never considered the Social Security decision in any respect. In fact, in the final denial letter, the committee states, please notify Matrix, the earlier administrator, if you have applied for Social Security. Obviously, completely unaware that not only had the claimant applied for Social Security, but had been denied. So didn't the plan document specifically say that eligibility for Social Security benefits did not determine disability eligibility under the plan? Under the plan or in any ERISA matter, while ERISA administrators are not bound by the Social Security determination, a complete disregard for contrary conclusion without an explanation raises questions about whether an adverse benefit determination was the product of a principled and deliberate reasoning process. In fact, not distinguishing SSA's contrary conclusion. Counsel, the cases you're relying on, did they have the language in the plan expressly stating that eligibility for Social Security benefits did not militate toward a finding of disability under the plan? Those cases you're citing, did they have that? There's no specific discussion in those cases, but most plans, a lot of plans do say, you know, Social Security decision, we're not bound by a Social Security decision. And in fact, ERISA case law recognizes that. In Hanna's case, the situation is even worse than the situation in Montour, the Ninth Circuit president, because in Montour, the administrator actually acknowledged the Social Security decision, but didn't engage in a thoughtful reasoning process to discount it. And here, not only did the administrator not engage in a thoughtful process, but didn't even recognize it when it was submitted. And there are numerous other factors similar to those in Montour and Stereo that go along with why this case really must be reversed. And in this case, we're here on a grant of summary judgment to Intel in an opposition, and under Nolan, certain evidence, including the, you know, 11th hour affidavit, the 2009 affidavit is attached to not the motion for summary judgment, but the reply. Under Nolan, that evidence is to be viewed in the light most favorable to Ms. Hanna and viewed with skepticism. What did the district court say about this argument? The district court didn't really engage in any thoughtful process. The district court didn't discuss the fact that the final decision by the committee specifically acknowledged they didn't even know she had Social Security. The district court just said, which is true, that the Social Security decision isn't binding on the administrator. And that's correct. Under Ninth Circuit case law, it is not binding. But also under Ninth Circuit precedent, a failure to completely discuss it is error. Not only under the Ninth Circuit, but under Glenn v. Matt Life, three of the justices commented on how this is a serious error. Breyer, in his opinion? What do you do with the language in Nolan v. Hill College where we talked about looking at the abuse of discretion standard on a motion for summary judgment is just a conduit for bringing the legal question. So it's not a matter of interpreting the evidence in the light most favorable. It just brings the legal issue to the forefront as to whether or not abuse of discretion occurred. Well, there's a difference in that case between exactly what you said, that it's a conduit. But Nolan distinguishes when there's evidence that wasn't before the administrator, that's after acquired evidence. There's a distinction in Nolan as to that evidence and how it's looked at. That evidence is evaluated under the normal summary judgment standards. And the Court discusses how in those cases there may have to be a bench trial to evaluate that evidence. That evidence has to be viewed with skepticism. But the appeals committee reviewed all of the evidence. There is no evidence that remained unreviewed by the company. Okay. Well, that's – I know that's what Intel's position is, but that's not accurate. The record does not support that position. If you look at the administrative record and the claim file, it wasn't until Intel, along with its reply brief, submitted various affidavits from people stating that all the evidence was looked at. There is nothing in the administrative record to show that that evidence was looked at. In fact, the final administrative denial at the site I gave, ER 1202, doesn't even recognize that the person is on Social Security and never discusses the vocational evaluation. There's no evidence that that information was ever looked at. And even in the affidavits themselves that were submitted with the reply, if you read them carefully, the affidavit from Dr. Fisher never says that he ever evaluated the vocational evaluation. And the list of – one last thing. The list of the evidence that they consider does not include, for instance, the vocational evaluation or the Social Security decision or a host of other things. It's partial. Let me ask you this, because this is a pretty draconian plan, actually, in the sense that it says that you have to have objective medical findings to support benefits. And if I understand it, this person's main problem is related to pain. And so I'm wondering, can you relate the evidence that you say was not considered to the requirements of this plan to establish eligibility for benefits? Yes, absolutely. First, it is a serious plan, and Pam has a serious disability. There's no dispute that she provided objective evidence of her medical condition by MRI. The dispute is over some plan language that says – that's interpreted to mean that she also needed to provide objective evidence of functional limitations resulting in an inability to work. And she did that. The extensive RFCs from the Chiari Institute, from the doctors who finally did neurological testing on her, new testing in 2003, May 8, 2003, and then diagnosed her, submitted extensive evidence, opinion evidence, linking her symptoms, not only of pain, but her progressive apresia, difficulty using her hands, all of that to the Chiari and Scringo-Myelia. And they provide an extensive functional assessment. Also, Dr. Dozier, who was aware of all the other opinions because all the letters are copied to him. He was the treating physician referring the claimant to the different doctors. He was aware of everything that had occurred, and he also did an opinion linking her condition to the functional restrictions. Those RFCs were never considered by the committee. They may have stated later on in an affidavit on reply that they considered that evidence, but it's not in the final letter of the committee. There's no thoughtful discussion. In fact, the letter of the committee talks about the doctors it does discuss. Those evaluations all predate her diagnosis from the Chiari Institute. In fact, they all predate her leaving work. The date she left work, for instance, Dr. Klingman is cited by Intel. He saw her in 1999 to evaluate arm pain, and he was not evaluating whether she had Scringo-Myelia or the degree. He evaluated her in 1999 while she was still working.  He says specifically that he was just doing EMG testing and wasn't sure about the issue. You have about a minute and a half left if you want to reserve some time. Two other doctors, Dr. Scalapino and Dr. Bowden, evaluated the claimant but also said they deferred their opinion to the Chiari Institute, which is eventually who diagnosed her. Thank you. Thank you. Good morning, Your Honor. If it pleases the Court, my name is Joseph Lambert. I represent the appellees in this case. The district court looked at all the documents, looked at all the pleadings, and found that appellant received a full and fair review of her claim because the plan language was interpreted reasonably, the factual findings were not clearly erroneous, and all the documents in appellant's medical records, as the Court has noted, including the last-minute documents submitted by appellant's counsel, were reviewed by the appeals committee before it made the final decision. The plan language, as the briefs specify, require objective medical findings of an abnormality that causes an inability to work, and another way of saying that is that the abnormality, to quote from the plan, must be understood and accepted by the medical community as diagnostic of the specific disabling condition asserted by the participant. And that's where the rub is in this case. There's no question that there are objective medical findings of a Chiari I, a mild, if you will, a borderline, according to Dr. Kula, a borderline Chiari I malformation and sphingomyelia. God help me pronounce these names right because I'm not really sure. But sphingomyelia I think is the second affiliated condition. These are unusual. This is unusual condition. I've never seen sphingomyelia before. Your Honor, neither have I. I don't think I've ever run across Chiari I either, but I think both of these, particularly the Chiari I, are relatively new. Yeah, and it took a long time to figure out what was really going on here. That's true, although at the end of the day it appears that the doctors were very well, the neurologist and the doctor who serves as the medical consultant for the Intel Appeals Committee was very aware of what Chiari I was and what sphingomyelias are, but they're rarely used to try to establish a disability. And if they do establish a disability, it's because the symptoms, the pain and the neurological damage that you see can be connected directly to that. And that's what we did not have in this case. We had the directors of the Chiari I or the Chiari Institute saying, yes, it's Chiari, but virtually no one else said that and several of the doctors, six of her own treating physicians, said something on the order of I don't think that the Chiari I is responsible for her symptoms. Some of them even went so far as to say they didn't think that the Chiari I and the sphingomyelia were necessarily connected. So I'm not sure what the precise outcome should be, but all we know for certain is that there really isn't evidence that the medical community has accepted that the Chiari I is the cause of the disabling pain. Well, you don't doubt that there was. Are you questioning? There's no suggestion here that she's a malingerer and that there wasn't any pain, is there? No one is suggesting that she doesn't have pain. We don't know. This plan is designed, and you're correct, it is draconian, Your Honor. It's draconian in the sense that it's very, very structured to try to make sure that the resources that are there are focused on people who have hard medical evidence not only of a condition but of their inability to work. In other words, there's got to be a diagnostic connection between those two. So a condition like fibromyalgia would not qualify under this plan? Not under the present state of the medical review of that particular condition or chronic fatigue, probably. Those are two that frequently come up. And Social Security now is much more heptal. Yes, Your Honor. Social Security's got an entirely different definition of disability. I don't believe it has any definition of objective medical findings. This plan has a very, very rigorous definition of objective medical findings, which excludes a lot of the things that Social Security will rely on, one of them being subjective reports of pain. So then how do you respond to opposing counsel's observation that the failure to even discuss the Social Security determination means that there was an abuse of discretion? Well, Your Honor, what the paperwork shows, what the documents show, incidentally, the declaration is there after the case, after the response was filed because the issue hadn't come up before. So when it came up in the response, we did a number of declarations to respond to issues that were raised in the response, and those were submitted with a reply. One of those was the declaration of the medical consultant who is a family practice, is board certified in family practice and occupational law, I would point out. I'm sorry, occupational medicine. His declaration establishes very clearly that all the documents that were there were reviewed. Were they all discussed in the final denial on appeal letter? No, but I don't believe ERISA requires that everything be discussed in the final denial on appeal letter or any of the other letters. They wouldn't be letters any longer. Some of these would be tomes. The long and the short of it is that the appeals committee had before it two independently chosen medical reviewers, and when I say independently chosen, there were multiple levels of insulation between the funder of the plan, Intel. It wasn't involved at all. Multiple levels of decision-making. The matrix, which was the third-party provider, would contact doctor experts, an outfit that provided medical reviewers, independent medical reviewers, or CORE, another outfit that did the same thing, with no input except, we need this as quickly as possible and we'd like to have a neurologist look at it. It went from there to some neurologist assigned by CORE or doctor's experts who, the record shows, had no dog in this hunt at all. They would lose nothing based on a denial or a grant of claim. So there were six of Appellant's own treating physicians who expressed doubt about the linkage between the abnormality and the inability to work, and both of the independent medical reviewers were unequivocal in reviewing the documents and saying it's just not there. The plan required objective medical findings, as defined in the plan, of an inability to perform work. Significance of the abnormality that was involved had to be understood and accepted by the medical community as diagnostic of the specific disabling condition asserted by the participant. It just wasn't there. But the denial was decided in good faith based on a reasonable interpretation of planned terms and is entitled to the court's deference under Montour Antibody. There was never any evaluation by an expert in this kind of condition, was there? A Chiari specialist, you know, somebody who looks at these routinely, not just an ordinary neurologist? Your Honor, I think ordinary neurologists are very well aware of this condition and its development. Do they study it and are they focused on it? Do they make a business out of it, if you will, as the Chiari Institute does? No. But both of the neurologists that reviewed the file are very well aware of what Chiari malformations are about and what syringomalias are about and when they come up and how big and how symptomatic they have to be to create the kind of pain that a talent has asserted. The people, the physicians who were at the Chiari Institute, were they neurologists as well? Your Honor, I don't know. Are there any further questions? Thank you. Ms. Adkins, you have about a minute and a half. Dr. Bolognese, in his Physical Residual Functional Capacity assessment in his letters, stated that due to the Chiari malformation and the cervical thoracic syringomalia, that Ms. Hama had constant pain, could only sit, stand, and walk less than two hours in an eight-hour day, could only stand and sit 15 minutes. That type of evidence, among other extensive discussions of her restrictions from the Chiari malformation and the thoracic syringomalia, was never reviewed by any neurologist, other than the neurologists at the Chiari Institute and subsequent neurologists treating Ms. Hama. Even Dr. Bogan, one of the leading neurologists in the country, said in his report that defendants cite against Ms. Hama's claim that he would defer to Dr. Milhart and the Chiari Institute when they assessed her. And so did other physicians that they're citing, saying we're not supportive of Hama's claim. It's just not true that there's any evidence from any evaluating physician before the reports from the Chiari Institute that doubt her claim. Thank you. Thank you. The court appreciates the argument of counsel. The case just argued is submitted for decision.
judges: Moody, Schroeder, Rawlinson